Willie CARR, Appellant,

v.

IOWA EMPLOYMENT SECURITY COMMISSION and Harold C. Funk and Joseph Muhlenbruck d/b/a 42nd Street Standard Oil Company Service Station, Appellees.

No. 59233.

Supreme Court of Iowa.

July 29, 1977.

Brent D. Hege, Des Moines, for appellant.

Blair H. Dewey, Des Moines, for appellees.

Heard before MOORE, C. J., and MASON, LeGRAND, REES and UHLENHOPP, JJ.

MASON, Justice.

This appeal by Willie Carr, claimant for benefits under chapter 96, The Code, is from the district court's decision sustaining an adverse ruling of the Iowa Employment Security Commission (hereinafter Commission). Carr had commenced an action in the Polk District Court seeking judicial review of a decision by the Commission wherein Carr was denied unemployment benefits. Following remand to the Commission for clarification of its decision and further findings of fact, the district court sustained the Commission's action.

In September of 1973 Carr's 19-month employment relationship with Harold C. Funk and Joseph Muhlenbruck, doing business as the 42nd Street Standard Oil Service Station, Des Moines, was terminated. This appeal stems from an extended controversy concerning the conditions which led to Carr's severance of the employment relationship. Specifically, the fighting issue in the Commission proceedings was whether Carr left his job voluntarily and without good cause attributable to his employer. The Commission concluded that was in fact the case and accordingly denied his claim. Section 96.5(1), The Code, 1973.

Carr's claim for benefits was filed with the Commission October 1, 1973. Following an investigation of the facts and circumstances surrounding the claim, a notice of disqualification or ineligibility was issued by a Commission deputy. Said notice was mailed to Carr October 30.

Carr filed notice of appeal from the deputy's decision to a hearing officer November 5. Notice of hearing before a hearing officer was sent to Carr and his employer November 9, indicating said hearing would be held November 19. Pertinent hereto are the following provisions of said notice:

"   *   *   *

"All facts concerning the allowance or disallowance of the claim must be presented at this time since no additional evidence will be received in event of subsequent appeals.   *   *   *

"   *   *   *

"ALL EVIDENCE MUST BE PRESENTED AT THIS HEARING SINCE NO ADDITIONAL EVIDENCE WILL BE RECEIVED IN THE EVENT OF SUBSEQUENT APPEAL."

Carr appeared at the hearing on his own behalf and Muhlenbruck appeared on behalf of the employer.

Carr testified he was hired by Funk, Muhlenbruck's partner, at a salary of $150 per week. However, during the first week of his employment, Funk informed Carr the station was in need of certain new equipment, and consequently, they could not afford to pay him the agreed salary. In lieu of the $150 per week salary, Funk offered to pay for airline tickets for a trip to California which Carr took each winter. During his employment, Carr expended considerable time and effort in an attempt to increase the station's business. However, his efforts were not appreciated. Funk al-

legedly verbally abused Carr and humiliated and embarrassed him in front of other employees. Racial prejudice allegedly precipitated Funk's conduct toward Carr. Finally, following numerous salary disputes, Carr quit his job on the ground the newly instituted commission-based salary was insufficient.

Muhlenbruck testified at the hearing but was unable to refute many of Carr's allegations. Apparently, Muhlenbruck had very little to do with the day-to-day affairs of the station. At one point, he testified, "I think we've got the wrong party of the partnership down here." Muhlenbruck stated he knew nothing of the various salary disputes referred to by Carr. With respect to Carr's efforts to increase the station's business, Muhlenbruck stated Carr did in fact hand out free car-wash tickets in the area of the Drake University campus. In addition, Muhlenbruck stated Funk and Carr did not get along well and Funk's treatment of Carr was not justifiable.

On the basis of the testimony summarized above, the hearing officer, in a decision dated November 26, 1973, concluded as follows:

" * * *

"This claimant was hired at a salary of $150 a week but during the period of his employment, was never paid anywhere near this amount. There is also evidence that the claimant was abused by his employer and humiliated by his employer in front of other employees and members of the public. The hearing officer finds that the claimant did have good cause attributable to the employer for leaving his employment on September 16, 1973.

"DECISION:

"The Decision of the deputy of October 22, 1973, is reversed. The claimant left his employment for good cause attributable to the employer and benefits shall be paid if he is otherwise eligible."

December 3 Carr's employer filed notice of appeal from the decision of the hearing officer to the full Commission. Said notice included the following provision:

"*IF* AN APPEAL TO THE COMMISSION, A DECISION WILL BE MADE BY THE COMMISSION BASED ON A REVIEW OF THE EXISTING EVIDENCE. * * *."

Subsequently, Carr received from the Commission a copy of the transcript of the hearing held November 19 and a document entitled "TRANSMITTAL OF TRANSCRIPT" which included the following statements:

" * * * No personal appearances before the Commission will be held as the decision will be based upon the record of the testimony given before the hearing officer. You may, however, submit a written brief and argument, *but this shall not include any new evidence.* The written argument must be based solely on the testimony set forth in the enclosed transcript. * *

" * * * [A]ny brief and argument must be submitted to the Commission not later than December 25, 1973." (Emphasis supplied).

In a letter to the Commission dated December 26, 1973, Funk detailed facts and circumstances surrounding Carr's employment termination which were not brought to light in the original hearing. In addition to a lengthy recitation of "facts" not included in the record previously made, Funk enclosed therewith payroll records covering the duration of Carr's employment.

January 31, 1974, Carr filed a petition for review of the Commission's action alleging the following:

" * * *

"a. That the facts found by the Commission do not support its order or decision;

"b. That there is not sufficient competent evidence in the record to warrant the making of the said order or decision;

" * * *."

Following a hearing on Carr's petition held November 3, 1975, the trial court issued a ruling filed November 4, which provided in part as follows:

" * * *

"By giving parties notice that an appeal to the entire Commission from the ruling of the hearing officer no new evidence would be admitted, the Commission bound itself to review of the decision based solely on the then admitted evidence.

"The ruling of the Commission handed down on January 31, 1974 is unclear as to its finding of facts. The Court cannot determine whether the Commission relied solely on the transcript of the evidence before the hearing officer or gave consideration to the new evidence in the letter submitted by the employer, Mr. Funk, after said hearing.

"Therefore this matter is remanded for clarification and further finding of fact by the Commission."

The Commission mailed an amended notice of decision to the parties involved on December 11. Said amended decision provided in part as follows:

"* * * *

"As a further finding of fact herein, the Commission finds that:

"1. Each individual member of the Commission read and considered said letter.

"2. Chairman Clayman's and Commissioner Shearer's decisions were not influenced by the letter.

"3. Commissioner Lundberg's decision was influenced by the letter."

Following Carr's December 23 motion for decision or ruling, the district court, in a ruling dated January 21, 1976, held in part as follows:

"* * * *

"By giving parties notice that an appeal to the Commission from the ruling of the hearing officer no new evidence would be admitted, the Commission bound itself to review the decision based solely on the then admitted evidence. The Commission did read and consider the letter and enclosure of Harold C. Funk and it was submitted as part of the record together with the transcript and exhibits of the first hearing to the District Court. In this action, the Commission was in error. However, two commissioners of three have stated that they were not influenced in their decision by this information. Therefore, such error was not prejudicial to petitioner.

"The Court in reviewing the finding of facts of the ruling of the Commission dated December 5, 1973 [sic, January 31, 1974] finds that such facts and inferences could be reasonably drawn from the evidence presented to the hearing officer, exclusive of the later evidence.

"Therefore, the ruling of the Employment Security Commission is sustained."

Carr contends the following issues are presented for review:

1. Did the district court err in ruling the Commission's consideration of new evidence submitted by the employer, in violation of the Commission's own rules, regulations and notices, was not prejudicial to Carr and did not violate the due process rights guaranteed him by the constitutions of the United States and the State of Iowa?

2. Did the district court err in finding there is sufficient competent evidence of record to support the Commission's decision?

I. In connection with his first contention Carr maintains the Commission's consideration of Funk's letter of December 26, 1973, denied Carr notice of the evidence to be considered by the Commission and denied him an opportunity to confront and cross-examine adverse witnesses. Carr insists he was deprived of the process due him under the provisions of Article I, section 9 of the Iowa Constitution and Amendments 5 and 14 to the United States Constitution.

██ Although the full panoply of procedural due process rights is not necessary for an administrative hearing to pass constitutional muster, it is clear a party subjected to such a proceeding is entitled to certain fundamental elements inherent in that constitutional phrase. See *Koelling v. Trustees of Skiff Hospital,* 259 Iowa 1185, 1197, 146 N.W.2d 284, 291. The basic or fundamental elements of due process of law are notice and opportunity to defend. *Hearth Corporation v. C-B-R Development Co., Inc.,* 210 N.W.2d 632, 637 (Iowa 1973).

The district court concluded that due process requirements apply in administrative proceedings and ruled that the Commission was in error in accepting and considering the new evidence, citing *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 and *Eves v. Iowa Employment Security Commission,* 211 N.W.2d 324 (Iowa 1973).

Carr in seeking reversal also cites *Goldberg* in support of his position.

*Goldberg,* involved termination of welfare benefits. At 397 U.S. 267–271, 90 S.Ct. 1020–1022, 25 L.Ed.2d 299, the Court made the following comments pertinent hereto:

" 'The fundamental requisite of due process of law is the opportunity to be heard.' * * * [citing authority]. The hearing must be 'at a meaningful time and in a meaningful manner.' * * * [citing authority]. In the present context these principles require that a recipient have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally. These rights are important in cases such as those before us, where recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases.

" * * * *

"In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses. * * [citing authorities]. What we said in *Greene v. McElroy,* 360 U.S. 474, 496–497, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377, (1959), is particularly pertinent here:

" 'Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots. They find expression in the Sixth Amendment * * *. This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, * * * but also in all types of cases where administrative * * * actions were under scrutiny.' * * *

" * * * *

"Finally, the decisionmaker's conclusion * * * must rest solely on the legal rules and evidence adduced at the hearing. * * [citing authorities]. To demonstrate compliance with this elementary requirement, the decision maker should state the reasons for his determination and indicate the evidence relied on, * * * [citing authority], though his statement need not amount to a full opinion or even formal findings of fact and conclusions of law, * * *."

In written brief and argument Carr also relies on *Eves v. Iowa Employment Security Commission.* In the cited case the sole issue presented was whether the Commission afforded claimant a "reasonable opportunity for fair hearing" as required by section 96.6(3), The Code. Claimant there asserted he had not received notice of the proceedings before the hearing officer and was thus deprived of his rights without due process since he had no opportunity to present evidence at that hearing.

This court in 211 N.W.2d at 326, cited *Goldberg* in concluding claimant was not afforded a reasonable opportunity for a fair hearing and went on to say:

"We cannot abdicate our duty to interpret statutory requirements in a proper case, nor in performing that function can this court be bound by agency rules or constructions. Administrative rules seek to

implement statutes but it is for the courts to finally interpret them. * * * [citing authority]. Rules cannot be adopted that are at variance with statutory provisions, or that amend or nullify legislative intent. * * * [citing authorities]. Administrative rules must be reasonable and used for the purpose of carrying out legislative enactments. An administrative body may not make law or change the legal meaning of the common law or statutes. * * * [citing authorities]."

This court held the issue in *Eves* was one of law and hence determinable by the judiciary alone.

■ We are convinced procedural due process precluded the Commission from considering the evidence submitted by Funk at the hearing before the full Commission in reaching its decision. The procedure utilized afforded Carr no opportunity to confront and cross-examine an adverse witness and no knowledge of and opportunity to rebut evidence introduced by said witness. See *In re Lone Tree Community School District,* 260 Iowa 719, 723, 150 N.W.2d 637, 639–640.

Obviously, in reaching the foregoing conclusion we agree with Carr's contention the proceedings before the Commission which are under attack by him were not investigatory in nature but constituted a hearing or proceeding for adjudication of claimant's right to benefits. See *Koelling v. Trustees of Skiff Hospital,* 259 Iowa at 1198, 146 N.W.2d at 292.

The district court recognized and concurred in the above analysis but concluded the constitutionally impermissible procedure of the Commission did not prejudice Carr in light of the fact the evidence in question only tainted the vote of one of the three commissioners. This conclusion is based on the trial court's determination there is substantial support in the record for the Commission's decision exclusive of the evidence submitted by Funk.

The only competent evidence before the Commission which was arguably contrary to Carr's testimony was the testimony of Muhlenbruck. On at least two occasions, Muhlenbruck stated he knew very little of the circumstances surrounding the termination of Carr's employment and that his partner, Funk, should have come to the hearing. Muhlenbruck's testimony confirms his observations. Clearly, his testimony, which substantiates most of Carr's version of the events leading to his departure and directly contradicts none, cannot be described as substantial support for the Commission's decision Carr was not entitled to unemployment benefits. The Commission's contrary assertion cannot be sustained.

In light of this record it is our opinion Carr was prejudiced by the Commission's failure to afford him procedural due process.

With directions to the trial court to set aside its ruling sustaining the decision of the Commission and to enter a decree sustaining the decision of the hearing officer finding Carr left his employment for good cause attributable to the employer the case is

Reversed and remanded.