Wayne D. DIRKS and Nancy D. Dirks, individually and as next friend of Crystal N. Dirks and Amber D. Dirks, Appellants,

v.

FARM BUREAU MUTUAL INSURANCE COMPANY, Appellee.

No. 89–1560.

Supreme Court of Iowa.

Feb. 20, 1991.

James E. Shipman and Martha L. Shaff of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellants.

William H. Roemerman and James L. Sines of Crawford, Sullivan, Read, Roemerman & Brady, Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, SNELL and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

Plaintiffs Wayne and Nancy Dirks, individually and as next friend of their children, Crystal N. Dirks and Amber D. Dirks, sued defendant Farm Bureau Mutual Insurance Company, their own insurer, for failure to pay them underinsured motorist benefits to which plaintiffs believed they were entitled under their auto insurance policies. After trial, the jury awarded plaintiffs damages, including punitive damages on plaintiffs' first-party bad faith claim against defendant.

Farm Bureau filed a motion for judgment notwithstanding the verdict on the bad faith claim. The district court granted the motion, ruling that, as a matter of law, Farm Bureau's actions did not constitute bad faith. Plaintiffs appealed that and other rulings. We affirm.

I. *Background facts and proceedings.* On May 2, 1986, a motorcycle operated by Wayne Dirks collided with a car driven by Brian Comley. Wayne was seriously injured in the accident.

Wayne's wife, Nancy, reported the accident to Farm Bureau's claims representative, John Barnts. Barnts investigated whether Wayne had an insurance policy on the motorcycle with Farm Bureau and, after communications with his superiors, advised Nancy that no coverage existed.

Later evidence showed that Wayne had no insurance policy on his motorcycle but he did have auto policies with Farm Bureau on an auto and a truck owned by him. These policies contained underinsured motorist provisions.

Shortly after the accident, plaintiffs sought legal advice from attorney Adrian Knuth regarding how to proceed. With Knuth's assistance, plaintiffs filed a lawsuit against Comley for injuries resulting from the accident. That suit was ultimately settled for $20,000, which was Comley's liability insurance policy limits.

Following settlement of the lawsuit against Comley, plaintiffs sent Farm Bureau a letter demanding coverage under the underinsured motorist provisions of their auto insurance policies. Three weeks later, having received no response from Farm Bureau, plaintiffs filed this lawsuit naming Farm Bureau and its former agent, Douglas Rahe, as defendants. Plaintiffs sought proceeds for underinsured motorist benefits allegedly owed them under their

auto insurance policies and actual and punitive damages resulting from Farm Bureau's alleged failure to fulfill its responsibilities as provided by the policies. Plaintiffs' theories of recovery included breach of contract, negligence, gross negligence, breach of fiduciary duty and bad faith.

Plaintiffs' lawsuit against Farm Bureau and Rahe proceeded to trial. At the close of plaintiffs' case, both defendants made directed verdict motions encompassing all issues involved in the case. The district court granted Rahe's directed verdict motion in its entirety and removed him as a defendant. Plaintiffs have not appealed that ruling.

The court also granted Farm Bureau's directed verdict motion on the issues of negligence, gross negligence and breach of fiduciary duty. Only plaintiffs' contract and first-party bad faith claims against Farm Bureau remained after the court's ruling on defendants' directed verdict motions. At this point in the trial, Farm Bureau also conceded that plaintiffs were entitled to underinsured motorist benefits up to $250,000 under the auto policies if the jury awarded plaintiffs damages in excess of the $20,000 they had already recovered from Comley's insurer.

At the close of all evidence, Farm Bureau renewed its directed verdict motion; that motion was overruled by the court and the case was submitted to the jury. The court stated, however, that it doubted whether the bad faith claim should be submitted to the jury.

The jury returned a verdict in favor of plaintiffs on the contract claim. It found that plaintiffs had sustained $1,102,000 in actual damages and that Comley was 80% at fault for those damages. The jury also found that Farm Bureau had acted in bad faith in failing to fulfill its contractual obligations and awarded plaintiffs punitive damages.

After considering both parties' post trial motions, the district court entered judgment on the contract claim in favor of plaintiffs for $250,000, the underinsured motorist policy limits. In addition, the court granted Farm Bureau's motion for judgment notwithstanding the verdict on the first-party bad faith claim, finding that Farm Bureau was entitled to judgment in its favor on that claim as a matter of law. *See* Iowa R.Civ.P. 243.

Both sides have appealed on numerous grounds. We only discuss, however, the central issue in this case: did the trial court err in granting defendant's motion for judgment notwithstanding the verdict on the bad faith claim? We conclude that all other issues raised by the parties are either without merit or unnecessary to discuss. Additional facts necessary to the resolution of the bad faith claim are stated below.

■ II. *Dirks' bad faith claim.* After a jury verdict awarding plaintiffs punitive damages for Farm Bureau's alleged bad faith denial of underinsured motorist benefits, the district court granted Farm Bureau's motion for judgment notwithstanding the verdict on the bad faith claim. Plaintiffs appeal, contending that the court erred in granting Farm Bureau's motion for judgment notwithstanding the verdict.

Initially, we mention the standards necessary to resolve this issue. Iowa Rule of Civil Procedure 243 explains when a motion for judgment notwithstanding the verdict may be granted. Rule 243 provides, in part:

Any party, may, on motion, have judgment in his favor despite an adverse verdict ...:

. . . .

(b) If the movant was entitled to have a verdict directed for him at the close of all the evidence, and moved therefor, and the jury did not return such verdict, the court may then either grant a new trial or enter judgment as though it had directed a verdict for the movant.

■ Our previous case law has discussed rule 243 in an effort to clarify when judgment notwithstanding the verdict is proper. We have stated that if there is substantial evidence to support each element of plaintiffs' claim, defendant's motion for judgment notwithstanding the verdict should be denied. *Valdez v. City of Des Moines*, 324 N.W.2d 475, 477–78 (Iowa 1982). Con-

versely, if there is no substantial evidence in support of each element of plaintiffs' claim, judgment notwithstanding the verdict in defendant's favor is appropriate. *Id.* at 478.

We also must set forth the standard for a first-party bad faith claim. We have previously held that a bad faith denial to pay insurance benefits occurs when a plaintiff shows "the absence of a reasonable basis for denying benefits of the policy and defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Dolan v. AID Ins. Co.*, 431 N.W.2d 790, 794 (Iowa 1988).

In an effort to make the bad faith concept more understandable to the jury, the trial court separated our definition of bad faith into the following elements and instructed the jury that in order for plaintiffs to prove their claim of bad faith denial of benefits, they must prove all of the following propositions:

1. Plaintiffs made a claim for underinsured motorist coverage.

2. Defendant denied plaintiffs' claim.

3. There was no reasonable basis for denying the claim.

4. Defendant knew there was no reasonable basis for denying the claim or acted in reckless disregard of whether there was any reasonable basis for denying the claim.

5. The denial was the reason plaintiffs did not receive underinsured motorists benefits.

On appeal, neither party challenges the validity of this instruction. Thus, for purposes of this appeal, we will assume that this instruction properly states Iowa law. Therefore, using this instruction, we need only determine whether there is substantial evidence to support a finding that each element of this instruction is satisfied.

A. *Did plaintiffs make a claim for underinsured motorist benefits?* The collision between Wayne Dirks and Comley occurred on May 2, 1986. On May 5, the first working day after the accident, Nancy reported the accident to Farm Bureau's local claims agent, John Barnts. Plaintiffs contend they made a claim for underinsured motorist benefits at this time. Farm Bureau contends that there is no substantial evidence to support the jury's finding that Nancy's report of the accident constituted an assertion of her family's claim for underinsured motorist benefits.

Farm Bureau concedes that Nancy's actions met the insured's reporting requirements of the auto insurance policies. Those duties included notifying Farm Bureau of the accident and giving the names and addresses of all persons involved, the hour, date, place and facts of the accident, and the names and addresses of witnesses. When Nancy complied with these policy requirements, she had made a claim for benefits as required by the express terms of the auto policies with Farm Bureau.

Farm Bureau still asserts that Nancy did not make a claim for underinsured motorist benefits on May 5 but, rather, Nancy was only reporting an accident. This argument fails because, as previously discussed, Nancy's actions met the requirements for asserting a claim as stated in the auto policies.

Further, the actions of Farm Bureau's agent, John Barnts, support plaintiffs' position that a claim was made. While Nancy was still at the Farm Bureau office, Barnts retrieved plaintiffs' insurance file and checked for a policy providing coverage. Barnts was not able to ascertain whether coverage existed at this point, so he told Nancy that he would check with his supervisors and then let her know if there was coverage. Less than one week later, Barnts called Nancy and advised that he had checked with the home office and there was no coverage. Barnts' actions, including checking plaintiffs' policies for coverage, calling his superiors for aid in determining whether coverage existed and calling Nancy with the news that he felt there was no coverage, establish that a claim was made.

Based on the fact that Nancy made a claim as required by the auto policies, and, the corroborating testimony of Barnts showing that he believed a claim was made,

substantial evidence was presented to show that a claim was made.

Farm Bureau's final contention on this point is that if Nancy did make a claim for benefits on May 5, it was not a claim for benefits under the automobile policies which ultimately afforded coverage. Farm Bureau argues that they thought plaintiffs were making a claim under a motorcycle policy.

First, the auto policies only require that a claim is made; they do not require that the auto policies be identified as the policies affording coverage when a claim is made. Where, as here, Farm Bureau was aware of the auto policies' existence, we think that it is not necessary to determine whether Nancy specifically identified the auto policies when she made plaintiffs' claim for coverage. Nevertheless, even if we were to require proof that a claim was made under the specific policies providing coverage, we think there is substantial evidence to support the conclusion that plaintiffs' claim for benefits included any benefits that might be available under the auto policies. Barnts was aware of the auto policies; the auto policies were in plaintiffs' file on the day the accident was reported; there was no motorcycle policy in the file; there was no testimony that Nancy specifically requested that plaintiffs be afforded coverage under the motorcycle policy and not under the auto policies; and, Nancy's actions satisfied the requirements for making a claim under the auto policies. Based on this evidence, the jury could reasonably have determined that plaintiffs made a claim as required by the auto policies. Any confusion on Farm Bureau's behalf concerning the policy under which plaintiffs' claim was made may be relevant to other elements of this bad faith action, but, it is not relevant to whether plaintiffs made a claim for underinsured motorist benefits.

We also note that a suit by plaintiffs against Comley was not a condition precedent to a claim under the underinsured motorist provisions of the auto policies. *See Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 461 N.W.2d 291, 294 (Iowa 1990).

**B.** *Did Farm Bureau deny plaintiffs' claim for underinsured motorist benefits?* Plaintiffs contend defendant denied their claim for underinsured motorist benefits. Farm Bureau asserts that there was no denial of any such claim. Its position is that it could not have denied a claim under the auto policies because no claim was ever made under those policies.

As we discussed above, there was a claim made under the auto policies. Therefore, Farm Bureau's argument is without merit. Further, after reviewing all the evidence bearing on the denial issue, we conclude that substantial evidence supported plaintiffs' contention that Farm Bureau denied plaintiffs' claim for underinsured motorist benefits.

**C.** *Was there a reasonable basis for denying plaintiffs' claim for underinsured motorist benefits?* The trial court, in ruling on Farm Bureau's motion for judgment notwithstanding the verdict, stated that the question of whether there was absence of a reasonable basis for denying plaintiffs' underinsured motorist benefits claim was "fairly debatable"; and thus, Farm Bureau did not act in bad faith. Where a claim is fairly debatable, the insurer is entitled to debate it and there is no bad faith on its part in doing so. *Dolan*, 431 N.W.2d at 794; *see also Hoekstra v. Farm Bureau Mut. Ins. Co.*, 382 N.W.2d 100, 111 (Iowa 1986); *Higgins v. Blue Cross*, 319 N.W.2d 232, 236 (Iowa 1982); *M–Z Enters. v. Hawkeye–Security Ins. Co.*, 318 N.W.2d 408, 415 (Iowa 1982). To the same end, Farm Bureau asserts that substantial evidence did not exist to support the jury's finding that no reasonable basis existed for denying plaintiffs' claim for underinsured motorist benefits. Plaintiffs contend to the contrary.

Plaintiffs' claim was originally denied by Farm Bureau shortly after it was made on May 5, 1986. At that time, there were several factors providing a reasonable basis for denying plaintiffs' claim. First, it is unclear if Farm Bureau was aware that Comley was insured, or, if he was insured, the amount of liability insurance that he carried. The record also does not disclose

whether the amount of money necessary to fully compensate Wayne for the injuries suffered in the accident had been established. *See McClure v. Northland Ins. Co.,* 424 N.W.2d 448, 450 (Iowa 1988) (the purpose of underinsurance coverage is to fully compensate the victim). It is also unclear whether liability as between Dirks and Comley had been established at this point. Based on this lack of information, Farm Bureau had a reasonable basis for denying underinsured motorist benefits at this point, and, there was no sufficient evidence presented at trial to support a contrary result.

The more difficult question is whether, at some later date, Farm Bureau became aware there was no reasonable basis to continue denying plaintiffs' claim for underinsured motorist benefits. Farm Bureau eventually received additional information relevant to plaintiffs' claim for underinsured motorist benefits. This culminated in plaintiffs restating their claim for underinsured motorist benefits in a letter received by Farm Bureau on March 17, 1988. With the knowledge of the additional information, we must determine whether Farm Bureau still had a reasonable basis for denying plaintiffs' claim.

We conclude that the information available to Farm Bureau provided a sufficient basis to validly dispute liability as between Dirks and Comley, and thereby, contest plaintiffs' claim. The dispute concerning liability provided Farm Bureau with a reasonable basis for denying plaintiffs' underinsured motorist benefits because Farm Bureau is only liable to pay sums Comley may owe plaintiffs to fully compensate plaintiffs after Comley's liability insurance had been depleted. *See American States Ins. Co. v. Estate of Tollari,* 362 N.W.2d 519, 522 (Iowa 1985).

In attempting to prove that the accident was Comley's fault, plaintiffs largely relied on Wayne's statements that Comley's vehicle crossed the center line and struck his motorcycle, and the testimony of an expert in accident reconstruction who testified that the collision occurred on Wayne's side of the road. Farm Bureau's investigation of the accident produced contrary information putting the liability question into dispute. That information included Comley's statement that he was on his side of the road, and that Wayne crossed the center line and struck his vehicle. Further, the deputy sheriffs that investigated the accident were unable to establish the precise location of the collision. There also was information indicating that Wayne was intoxicated at the time of the accident. Finally, Farm Bureau had the accident reviewed by an accident reconstruction specialist who determined that there was not sufficient evidence to establish which vehicle crossed the center line.

Based on the conflicting information concerning who was at fault for the accident, we agree with the trial court's conclusion that the validity of plaintiffs' claim for underinsured motorist benefits was fairly debatable. We also conclude that substantial evidence did not exist to support the jury's finding that no reasonable basis existed for denying plaintiffs' claim for underinsured motorist benefits. Because there was a reasonable basis for denying plaintiffs' claim, defendant Farm Bureau's motion for directed verdict should have been granted as to plaintiffs' bad faith claim. Accordingly, we need not consider the final two elements of bad faith included in the marshaling jury instruction.

We commend the trial court for its thoughtful and knowledgeable handling of this case. We conclude the district court properly granted Farm Bureau's motion for judgment notwithstanding the verdict on the first-party bad faith claim.

We affirm the district court's rulings on all issues raised on plaintiffs' appeal. The issues in Farm Bureau's cross appeal are now moot.

Appellate costs are taxed to plaintiffs.

AFFIRMED.