Garold F. HESLINGA, Administrator of the Estate of Arbor Robertson, Appellee,

v.

Fern BOLLMAN, Appellant.

No. 90–1635.

Supreme Court of Iowa.

April 15, 1992.

Richard J. Gaumer, Ottumwa, for appellant.

Garold F. Heslinga, Oskaloosa, pro se.

Considered by HARRIS, P.J., and LARSON, LAVORATO, NEUMAN, and SNELL, JJ.

NEUMAN, Justice.

This is an appeal from a judgment for compensatory and punitive damages recovered by the administrator of an intestate estate in an action for conversion. The appellant, a Kansas resident, challenges only the personal jurisdiction of the Iowa district court. We affirm.

The facts are not disputed. Arbor Robertson of Oskaloosa, Iowa, died in December 1985. Appellant Fern Bollman, her sister and a resident of Kansas, traveled to Iowa to care for her prior to her death. While in Bollman's care, Robertson revealed that she had made a "will" comprised of two handwritten letters.

After Robertson's death, Bollman took charge of her assets and sought the advice of an Iowa lawyer about their disposition. Some assets she distributed according to the letters, others were given to her sister's grandchildren and neighbors. Bollman took the remaining personal property—two family Bibles, photographs, letters, and assorted household goods—back to Kansas.

This controversy began when Robertson's niece and nephew objected to the distribution. They retained an attorney, appellee Garold Heslinga, to negotiate with Bollman for return of the property they desired. When informal negotiations proved unsuccessful, Heslinga commenced estate proceedings and was appointed administrator.

Bollman was eventually found in contempt for disobeying a probate order to return Robertson's assets. Heslinga then sued Bollman for conversion. She was personally served in Kansas and the court overruled her attorney's motion to dismiss on jurisdictional grounds. A default judgment was entered in Heslinga's favor. The court later entered judgment for actual damages of $6410 and punitive damages of $10,000.

■ On appeal Bollman challenges the district court's denial of her motion to dismiss. She contends the court lacked personal jurisdiction because she did not have the requisite "minimum contacts" with the State of Iowa.

■ The parties agree that if personal service has been made upon a defendant who is not present within the forum state, the determination of whether a court may constitutionally exercise jurisdiction depends on whether the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Universal Coops., Inc. v. Tasco, Inc.*, 300 N.W.2d 139, 143 (Iowa 1981) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945)). This constitutional "minimum contacts" standard is applied by Iowa courts on a case-by-case basis. *Id.* In doing so, we consider (1) the quantity of the contacts, (2) the nature and quality of the contacts, (3) the source and connection of the cause of action with those contacts, (4) the interest of the forum state, and (5) convenience. *Bankers Trust Co. v. Fidata Trust Co.*, 452 N.W.2d 411, 413 (Iowa 1990). When a litigant's conduct relative to the forum state is such that she should "reasonably anticipate being haled into court there," the

state may constitutionally exercise in personam jurisdiction. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980).

Bollman attempts to minimize the quantity and quality of her contacts with this state but the record reveals an ongoing connection with Iowa and its residents. Bollman not only resided in this state for some period of time prior to Robertson's death, afterwards she made funeral arrangements, took control of the assets, and resolved her late sister's affairs. It is true that after she returned to Kansas, Bollman did not revisit Iowa. But to say she had no regular pattern of contacts with the state is to ignore the fact that she consulted Iowa counsel before departing with the goods, and later retained three different Iowa attorneys to negotiate a compromise concerning return of the very property at issue in the conversion action. She submitted herself to the jurisdiction of the probate court relative to the contempt case. Taken together, these actions signal to us her acknowledgment of the district court's jurisdiction and her expectation that she was subject to it.

When a plaintiff incurs injury in this state resulting from the acts of a defendant who should reasonably know that her conduct will result in damage in Iowa, this state has a strong interest in hearing the case and protecting its resident. *Tasco,* 300 N.W.2d at 145. The fact Bollman sought legal advice in Iowa before distributing her sister's assets shows that she knew her actions had legal implications, that this state had a significant interest in the matter, and that Iowa law applied.

In summary, we are convinced that the quantity, nature, and source of Bollman's connection with this Iowa cause of action justifies the exercise of personal jurisdiction by an Iowa court. We affirm the district court's denial of her motion to dismiss.

AFFIRMED.