**COVIA, Employer, and Chubb Group of Insurance Companies, Insurance Carrier, Appellees,**

v.

**Frederick ROBINSON, Jr., Surviving Spouse of Diana Patricia Robinson, Appellant.**

No. 92–1769.

Supreme Court of Iowa.

Oct. 20, 1993.

Barry Moranville, West Des Moines, and Pamela Greenman Dahl of Harry W. Dahl, P.C., Des Moines, for appellant.

Roy M. Irish of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for appellees.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

SNELL, Justice.

I. On this appeal, we determine whether Covia, appellee, should be penalized under Iowa Code section 86.13 (1989) for delaying payment of workers' compensation death benefits to Frederick Robinson, Jr., claimed in connection with the 1989 death of his wife, Diana. The Iowa Industrial Commissioner held Covia's delay unreasonable. The Commissioner ruled the arguments advanced by Covia justifying their delay failed to present "fairly debatable" questions of fact or law. The district court reversed this ruling. The sole issue on appeal is whether Covia's reasons for delay were supported by arguments presenting fairly debatable questions of law. Our review is for errors at law. Iowa R.App.P. 4.

II. Diana Robinson died in the July 19, 1989 crash of United Airlines Flight 232 in Sioux City, Iowa. She was en route from Denver, Colorado, to Rosemont, Illinois. It is undisputed that Robinson was traveling to Rosemont that day in the course of her employment with Covia. Covia is a computer firm headquartered in Rosemont, Illinois.

Her husband, Frederick, filed for workers' compensation benefits both in Colorado and in Iowa. Benefits were immediately paid to Frederick Robinson in Colorado. However, Covia challenged the jurisdiction of the Iowa Industrial Commissioner exercised pursuant to Iowa Code section 85.3. Iowa Code § 85.3 (1989). All third-party claims are now settled. However, Robinson alleges Covia unreasonably delayed payment of death benefits under the Iowa Workers' Compensation Act. Id. § 86.13. Robinson contends Covia's jurisdictional arguments present no fairly debatable questions of law. Consequently, he argues that Covia should be penalized for their delay pursuant to Iowa Code section 86.13. Id.

Covia is a travel agency and computer support firm serving, ironically, United Airlines. It is a partnership based in Delaware. Of its approximately 3000 employees in 1989, two resided in the state of Iowa. In 1989, approximately 1.8% of Covia's revenue was generated in Iowa. Of all the travel agents worldwide utilizing Covia's shared computerized travel service network, only 1.74% of those agents were located in Iowa.

Diana Robinson resided in Colorado. As part of her employment arrangement with Covia, it was expected she would travel often to Rosemont, Illinois, on business. Iowa was never a place of destination for Robinson in the course of any of her business travels.

III. Iowa Code section 86.13 provides in part:

> If a delay in commencement or termination of benefits occurs without reasonable or probable cause or excuse, the industrial commissioner shall award benefits in addition to those benefits payable under this chapter, ... up to fifty percent of the amount of benefits that were unreasonably delayed or denied.

Section 86.13 codifies, in the workers' compensation insurance context, the common law rule that insurers with good faith disputes over the legal or factual validity of claims can challenge them, if their arguments for doing so present fairly debatable issues. *See Dirks v. Farm Bureau Mut. Ins. Co.*, 465 N.W.2d 857, 861 (Iowa 1991); *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 794 (Iowa 1988). There is

no debate on the part of either party as to the applicability of this rule to this case.

The crux of this appeal is whether Covia's challenge to the exercise of in personam jurisdiction over them by the Iowa Industrial Commissioner presents a fairly debatable issue. Jurisdiction was exercised pursuant to Iowa Code section 85.3(2) which states:

> Any employer who is a nonresident of the state, for whom services are performed within the state by employees entitled to rights under this chapter ... by virtue of having such services performed shall be subject to the jurisdiction of the industrial commissioner and to all of the provisions of this chapter ... as to any and all personal injuries sustained by an employee arising out of and in the course of such employment within this state.

Iowa Code § 85.3(2).

▮ Section 85.3 is essentially a "long arm" statute. The statute specially authorizes the exercise of in personam jurisdiction by the Iowa Industrial Commissioner over nonresident defendants. *See id.* In analyzing "long arm" statutes, we are guided by a two-step procedure. *See Kagin's Numismatic Auctions, Inc. v. Criswell,* 284 N.W.2d 224, 227–28 (Iowa 1979). First, we determine whether the exercise of in personam jurisdiction is authorized by the statute. *Id.* In effect, we simply determine whether the statute is applicable to the facts in the instant case. Second, we determine whether the exercise of in personam jurisdiction over the parties is constitutional under the limits of the Due Process Clause of the Fourteenth Amendment. U.S. Const. amend. XIV; *Id.* at 228. The second inquiry requires this court to determine whether Covia maintains the requisite "minimum contacts with the forum state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Heslinga v. Bollman,* 482 N.W.2d 921, 922 (Iowa 1992). If the prospective resolution of these two questions sets a stage for fair debate, the imposition of a penalty against Covia was erroneous as a matter of law. *Dirks,* 465 N.W.2d at 861.

## IV. *Legal Issues.*

Robinson argues, with respect to the applicability of section 85.3 to Covia, that Diana Robinson was unquestionably performing services within the state of Iowa. Moreover, Robinson argues Diana Robinson's death, without doubt, arose "out of and in the course of [her] employment within the state." Iowa Code § 85.3. Essentially, he contends the mere act of traveling in the air space of Iowa in the course of her employment with Covia places Covia within the jurisdictional power of the Iowa Industrial Commissioner. Moreover, Robinson notes that other states' workers' compensation acts authorize jurisdiction over all work-related injuries occurring within their borders. He contends Iowa's statute does the same. Finally, Robinson contends Iowa has a policy interest in assuming jurisdiction over Covia and presumably all other parties with economic interests resulting from the crash. Robinson notes that medical care for the injured and autopsies of the dead took place in Iowa, not anywhere else. These facts, according to Robinson, weigh in favor of finding the exercise of in personam jurisdiction over Covia indisputably proper.

Covia argues section 85.3 does not contemplate authorization of an exercise of personal jurisdiction over parties based on the happenstance occurrence that an employee of a nonresident employer is injured in an airplane crash within the state's borders. Covia contends it was not reasonably expected by anyone that Robinson would ever have performed services within the state of Iowa. According to Covia, section 85.3, to be triggered, requires more. At the very least, Covia contends, the question is fairly debatable and they should not have been penalized for raising it.

As to the constitutional due process question, Robinson argues Covia maintained more than enough significant contacts with the state of Iowa. Thus, the exercise of in personam jurisdiction over Covia, according to Robinson, clearly does not violate "traditional notions of fair play and substantial justice." Robinson reminds the court that a massive presence in the state is not required to satisfy the demands of due process under the

Constitution. Covia maintained two employees in the state and Diana Robinson's death occurred in the state. These two factors, according to Robinson, bring the exercise of in personam jurisdiction over Covia within the fundamental requirements of due process.

Robinson also contends that to hold this exercise of in personam jurisdiction invalid, we would effectively be declaring section 85.3 unconstitutional. Because we choose not to rule whether the exercise of jurisdiction was proper, we do not address this argument. Our only concern is whether the issue is fairly debatable. Moreover, we think Robinson's reliance on the Full Faith and Credit Clause of the Constitution is misplaced. There is no question arising in this case as to whether proceedings in Iowa are precluded by prior proceedings which took place in Colorado. *See Pacific Employers Ins. Co. v. Industrial Accident Comm'n,* 306 U.S. 493, 497–98, 59 S.Ct. 629, 631, 83 L.Ed. 940, 944 (1939). Rather, we are concerned about whether the Iowa Industrial Commissioner possesses the jurisdictional power to hale Covia into its forum. Such inquiries are governed by the demands of the Fourteenth Amendment, not the Full Faith and Credit Clause. *See Carr v. Iowa Employment Sec. Comm'n,* 256 N.W.2d 211, 214 (Iowa 1977); *compare Schmidt v. Pittsburgh Plate Glass Co.,* 243 Iowa 1307, 1311, 55 N.W.2d 227, 229 (1952).

Regarding the due process issue, Covia contends it did not maintain sufficient minimum contacts with the state of Iowa to become subject to the in personam jurisdictional power of the state industrial commissioner. The only connection this case has with the state of Iowa, Covia asserts, is the fluke that the pilot of the United Airlines plane decided to attempt an emergency landing in Sioux City. Covia recognizes it possessed other unrelated contacts with the state. It employs two travel agents in Iowa and generates a minimal amount of revenue in Iowa. However, Covia argues that under the progeny of cases following *International Shoe Co. v. Washington,* there must be some relation between the contact alleged in the case and the cause of action. *International Shoe Co.*

*v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Rush v. Savchuk,* 444 U.S. 320, 327, 100 S.Ct. 571, 576, 62 L.Ed.2d 516, 524 (1980); *Meyers v. Kallestead,* 476 N.W.2d 65 (Iowa 1991). Moreover, Covia argues its activities in Iowa do not rise to the level of being "continuous and systematic" justifying the exercise over them of general jurisdiction under *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (*reh'g den.* 343 U.S. 917, 72 S.Ct. 645, 96 L.Ed. 1332 (1952)); *see also Davenport Machine & Foundry Co. v. Adolph Coors Co.,* 314 N.W.2d 432, 435 (Iowa 1982). This miniscule amount of activities, according to Covia, is not sufficient to justify the exercise over them of personal jurisdiction. Covia argues that under *World–Wide Volkswagen* we cannot support the exercise of personal jurisdiction based on one random and isolated circumstance occurring in our state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490, 500 (1980).

## V. *Scope of Section 85.3.*

■ With respect to the applicability of section 85.3, the issue, as presented by the facts in this case, is one of first impression. That fact alone militates in favor of holding the issue is subject to fair debate. We find section 85.3 is reasonably susceptible to more than one reading. The facts of this case lay bare the latent ambiguity of the statute.

Section 85.3 could reasonably be read to authorize jurisdiction over employers of any employees injured in the state, notwithstanding any other circumstances. This was the construction given the statute by professor Arthur Larson in his treatise on workers' compensation law. *See* 4 Arthur Larson, *Workmen's Compensation Law* § 87.13 n. 9 at 16–72 (1989). Nonetheless, the statute could also reasonably be interpreted to authorize jurisdiction only over injuries arising out of employment activities greater than were the activities of Covia and Diana Robinson. We recognize the trend among other jurisdictions is to broaden the scope of jurisdiction over parties to cover any injuries occurring within state boundaries. *See, e.g.,* Ala.Code §§ 25–5–1, 31, 35 (1992); Colo.Rev.

Stat. §§ 8–40–203(1)(b), –41–301(1)(a) (Supp. 1993); Haw.Rev.Stat. §§ 386–1, –6 (1988); Neb.Rev.Stat. § 48–175.01 (1988); S.C.Code Ann. § 42–15–10 (Law. Co-op 1985); *see also* 4 Larson, at § 87.20. However, some states do not grant such broad jurisdictional power to their workers' compensation bureaus. *See, e.g.,* Alaska Stat. § 23.30.011(c) (1970); Del.Code Ann. tit. 19, § 2303(c), (d)(5) (1984); 77 Pa.Cons.Stat.Ann. § 411.2 (Supp.1991). In many cases, state courts have implied jurisdictional authority over all injuries occurring within their respective states based on interpretations of other provisions of their respective workers' compensation acts. *See, e.g., Philyaw v. Arthur H. Fulton, Inc.,* 569 So.2d 787 (Fla.Dist.Ct.App.1990); *Security Ins. Group v. Plank,* 133 Ga.App. 815, 212 S.E.2d 471, 473–74 (1975); *Bryant v. Jericol Mining, Inc.,* 758 S.W.2d 45, 46–47 (Ky.Ct. App.1988); *Argonaut Ins. Co. v. S.E. Vanatta,* 539 S.W.2d 35, 37 (Tenn.1976); *Millican v. Liberty Mut. Ins. Co.,* 224 Tenn. 604, 460 S.W.2d 842, 844 (1970). All of the statutes interpreted in these decisions differ in one significant way or another from our own. The most significant difference is that none of the statutes interpreted in these cases contains language limiting the state's in personam jurisdictional power over employers in any way. Iowa Code section 85.3(2) does. To what extent, we need not inquire at this juncture as the issue is subject to fair debate. Covia should not be penalized for raising challenges to the exercise over it of personal jurisdiction.

### VI. *Due Process.*

■ As to the due process issue, it also is a question we believe fairly debatable. In determining whether a defendant maintains certain minimum contacts with a forum state, we consider five factors. *Bankers Trust Co. v. Fidata Trust Co.,* 452 N.W.2d 411, 413 (Iowa 1990). We determine such issues on a case-by-case basis. *Heslinga,* 482 N.W.2d at 922.

■ Preliminarily, we note the exercise of in personam jurisdiction over parties by the Industrial Commissioner is not immune from Fourteenth Amendment due process scrutiny. The full panoply of due process rights are not necessary for administrative proceedings to pass constitutional scrutiny. *Carr v. Iowa Employment Sec. Comm'n,* 256 N.W.2d 211, 214 (Iowa 1977). However, parties are "entitled to certain fundamental elements inherent in that constitutional phrase." *Id.* The very purpose of our minimum contacts analysis is to wrestle back the occasional overreaching long arm of the state when its attempted exercise of personal jurisdiction over a party "offends traditional notions of fair play and substantial justice." *World–Wide Volkswagen,* 444 U.S. at 291, 100 S.Ct. at 564, 62 L.Ed.2d at 498. We believe this minimum constitutional safeguard applies to the actions of administrative agencies.

We consider five factors when analyzing whether a person maintains the requisite minimum contacts with our forum. These five factors are: (1) the quantity of the contacts, (2) the nature and quality of the contacts, (3) the source and connection of the cause of action with those contacts, (4) the interest of the forum state, and (5) convenience. *Bankers Trust,* 452 N.W.2d at 413. We believe when the facts of this case are analyzed under this test, the conclusion which ought to be reached is fairly debatable.

■ The most significant single contact in the case occurred in Iowa—the airplane crash. However, we believe it can be fairly argued such an occurrence is the exact type of isolated incident contemplated by the United States Supreme Court in *World–Wide Volkswagen. World–Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. at 567, 62 L.Ed.2d at 502. "The 'quality and nature' of an interstate transaction may sometimes be so 'random,' 'fortuitous,' or 'attenuated,' that it cannot fairly be said that the potential defendant 'should reasonably anticipate being haled into court' in another jurisdiction." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 486, 105 S.Ct. 2174, 2189, 85 L.Ed.2d 528, 549 (1985). We believe the occurrence of the plane crash in Sioux City can reasonably be argued to fall within the realm of the "random," "fortuitous," and "attenuated." *Id.* Covia's other contacts with Iowa are completely unrelated to the instant cause of action. "Jurisdiction of the person lies where the defendant has purposefully direct-

ed its activities at residents of the forum state ... and litigation results from alleged injuries that arise out of or are related to those activities." *Meyers,* 476 N.W.2d at 67. On the other hand, it could reasonably and perhaps compellingly be argued that Covia's contact with Iowa rose to the level of being "continuous and systematic" subjecting Covia to the general jurisdictional power of the state. *See Helicopteros Nacionales De Columbia, S.A. v. Hall,* 466 U.S. 408, 415, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404, 411 (1984). In these situations we have previously held a nonresident corporation's forum contact need not be related to the cause of action. *Bankers Trust,* 452 N.W.2d at 415. Where a defendant's contact with a foreign forum can be characterized as "continuous and systematic" it is "presumptively not unreasonable to require him to submit to the burdens of litigation in their forum as well." *Burger King,* 471 U.S. at 475–76, 105 S.Ct. at 2184, 85 L.Ed.2d at 543; *Bankers Trust,* 452 N.W.2d at 415. This presumption, however, is not irrebuttable. *Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2185, 85 L.Ed.2d at 544. "[M]inimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Id.* (citing *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564, 62 L.Ed.2d at 498; Restatement (Second) of Conflicts of Laws §§ 36–37 (1971)).

The State of Iowa does have an interest in the case. The casualties of the crash occurred here. Medical personnel and other local residents with economic interests in the case normally would be inconvenienced if forced to go to a foreign state to settle their claims. However, no evidence is present in the record documenting such interests in this case. Although the parties to this case all reside in Colorado, the witnesses to the event are most likely Iowa residents. Convenience to the parties is not a weighty factor in this case. Moreover, the state of Iowa has no interest in the imposition or nonimposition of a penalty against Covia.

We decline to resolve the jurisdictional issue as it is unnecessary to do so. We do, however, find the issue fairly debatable since there are viable arguments in favor of either party. We believe Covia should have been able to raise these arguments without being penalized under section 86.13.

We find no reason to remand the case to the Industrial Commissioner. The only issue presented in this case is whether a penalty was appropriately imposed under section 86.13. We agree with the district court that it was not. The district court is affirmed.

**AFFIRMED.**