Ronald Lee MEYERS, Appellant,

v.

HOLIDAY EXPRESS CORPORATION
and Liberty Mutual Company,
Appellees.

No. 95–144.

Supreme Court of Iowa.

Nov. 20, 1996.

As Amended on Denial of Rehearing
Jan. 23, 1997.

Mark S. Soldat, Algona, for appellant.

Tito Trevino and Joseph W. Fernandez of Trevino Law Office, Fort Dodge, for appellees.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, SNELL, and ANDREASEN, JJ.

LARSON, Justice.

Ronald Lee Meyers was injured while employed at Holiday Express Corporation, a trucking firm. He was awarded workers' compensation benefits, but he appealed on the ground that the district court erred in affirming an award by the industrial commissioner without properly computing additional penalty and interest provided by statute. *See* Iowa Code § 86.13 (1989) (penalty); Iowa Code § 85.30 (interest). We vacate the decision of the court of appeals, affirm the district court judgment in part and reverse it. in part, and remand with instructions.

While employed by Holiday Express, Meyers injured his left knee on March 15, 1988. He was off work until May 15, 1988, when his treating physician allowed him to return to work. Meyers injured his left knee again while climbing into a truck on December 21, 1988. He was released to return to work on July 25, 1989, but his doctor instructed him to wear a knee brace and to avoid loading or unloading trucks. On August 14, 1989, Meyers quit because he was asked to work over fifteen consecutive days. On August 25, 1989, Meyers' treating physician recommended that his work week be limited to five days.

Meyers filed workers' compensation claims. The case proceeded through the industrial commissioner's office to the district court, then to the court of appeals, which remanded to the industrial commissioner for additional findings. The industrial commissioner made those findings, and Meyers petitioned for judicial review. The district court affirmed, and Meyers appealed. The court of appeals affirmed in part and remanded some issues for determination by the industrial commissioner. We granted further review.

▮ Our review of an industrial commissioner's decision is governed by Iowa Code chapter 17A. *See* Iowa Code § 86.26. We review for correction of errors at law. *McCormick v. North Star Foods, Inc.,* 533 N.W.2d 196, 198 (Iowa 1995); *Aluminum Co. of Am. v. Quinones,* 522 N.W.2d 63, 65 (Iowa 1994). Issues of law are determined by the court, and we give only limited deference to the interpretation of an administrative agency. *McCormick,* 533 N.W.2d at 198; *Quinones,* 522 N.W.2d at 65.

Most of the issues in this case concern the application of the penalty provisions under Iowa Code section 86.13:

> If a delay in commencement or termination of benefits occurs without reasonable or probable cause or excuse, the industrial commissioner shall award benefits in addition to those benefits payable under this chapter, or chapter 85, 85A, or 85B, up to fifty percent of the amount of benefits that were unreasonably delayed or denied.

Meyers complains that the industrial commissioner erred in refusing penalties on the ground that the delays were "minimal," without a showing that the delays were "reasonable or [based on] probable cause or excuse" as required by Iowa Code section 86.13. Meyers seeks to have penalty benefits applied to five alleged delays. A sixth delay was originally involved but is presently on remand to the industrial commissioner and is not a part of this appeal.[1]

Meyers contends that penalties should be imposed for: (1) delays in paying healing-period benefits following injuries to Meyers on March 15, 1988, and December 21, 1988; (2) delays in paying temporary disability benefits for July 12, 1988, to August 5, 1988; (3) delays resulting from the failure to pay at the correct rate for the March 15, 1988 injury; (4) delays resulting from the failure to pay at the correct rate for the December 21, 1988 injury; and (5) late payment of portions of Meyers' permanent partial disability benefits. In addition to Meyers' claim for penalties, he raises issues as to the commissioner's failure to award healing-period benefits for the period of August 25, 1989, to January 9, 1990, and the taxation of costs by the commissioner and the district court.

## I. *Application of Iowa Code Section 86.13.*

In two recent cases, *Robbennolt v. Snap–On Tools Corp.,* 555 N.W.2d 229 (Iowa 1996), and *Christensen v. Snap–On Tools Corp.,* 554 N.W.2d 254 (Iowa 1996), we discussed the application of section 86.13 penalties. In *Christensen* we said:

> Based on the plain language of section 86.13, we hold an employee is entitled to penalty benefits if there has been a delay in payment unless the employer proves a reasonable cause or excuse. A reasonable cause or excuse exists if either (1) the delay was necessary for the insurer to investigate the claim or (2) the employer had a reasonable basis to contest the employee's entitlement to benefits. A "reasonable basis" for denial of the claim exists if the claim is "fairly debatable."

*Christensen,* 554 N.W.2d at 260.

In light of our recent cases, several principles may be distilled from the penalty provisions of Iowa Code section 86.13.

▮ (1) If the employer has a reason for the delay and conveys that reason to the employee contemporaneously with the beginning of the delay, no penalty will be imposed if the reason is of such character that a reasonable fact finder could conclude that it is a "reasonable or probable cause or excuse" under Iowa Code section 86.13. In that case,

---

1. The employer and its insurance carrier ask that the present appeal be stayed until this matter is resolved by the commissioner on remand, but we decline to do so.

we will defer to the decision of the commissioner. *See Robbennolt*, 555 N.W.2d at 236; *Christensen*, 554 N.W.2d at 260 (substantial evidence found to support commissioner's finding of legitimate reason for delay pending receipt of medical report).

■ (2) If no reason is given for the delay or if the "reason" is not one that a reasonable fact finder could accept, we will hold that no such cause or excuse exists and remand to the commissioner for the sole purpose of assessing penalties under section 86.13. *See Christensen*, 554 N.W.2d at 261.

■ (3) Reasonable causes or excuses include (a) a delay for the employer to investigate the claim, *Christensen*, 554 N.W.2d at 260; *Kiesecker v. Webster City Custom Meats, Inc.*, 528 N.W.2d 109, 111 (Iowa 1995); or (b) the employer had a reasonable basis to contest the claim—the "fairly debatable" basis for delay. *See Christensen*, 554 N.W.2d at 260 (holding two-month delay to obtain employer's own medical report reasonable under the circumstances).

■ (4) For the purpose of applying section 86.13, the benefits that are *under* paid as well as *late*-paid benefits are subject to penalties, unless the employer establishes reasonable and probable cause or excuse. *Robbennolt*, 555 N.W.2d at 237 (underpayment resulting from application of wrong wage base; in absence of excuse, commissioner required to apply penalty).

> If we were to construe [section 86.13] to permit the avoidance of a penalty if *any* amount of compensation benefits are paid, the purpose of the penalty statute would be frustrated. For these reasons, we conclude section 86.13 is applicable when payment of compensation is not timely ... or when the full amount of compensation is not paid.

*Id.*

■ (5) For purposes of determining whether there has been a delay, payments are "made" when (a) the check addressed to a claimant is mailed (*Robbennolt*, 555 N.W.2d at 236; *Kiesecker*, 528 N.W.2d at 112), or (b) the check is delivered personally to the claimant by the employer or its workers' compensation insurer. *Robbennolt*, 555 N.W.2d at 235. In the present case, the insurer sent the checks to the employer, not to the claimant. The employer then delivered the checks to the claimant. In this case, payment is not "made" for penalty purposes until the claimant actually receives the check. *See id.*

■ (6) In determining the amount of penalty, the commissioner is to consider factors such as the length of the delay, the number of delays, the information available to the employer regarding the employee's injury and wages, and the employer's past record of penalties. *Id.* at 238.

(7) An employer's bare assertion that a claim is "fairly debatable" does not make it so. A fair reading of *Christensen* and *Robbennolt* makes it clear that the employer must assert *facts* upon which the commissioner could reasonably find that the claim was "fairly debatable." *See Christensen*, 554 N.W.2d at 260.

## II.   *Delay in Healing–Period Benefits.*

■ Meyers contends that payments were delayed for healing-period benefits in connection with the injuries of March 15, 1988, and December 21, 1988. For the healing period that began on March 21, 1988, payment was not made until April 5, 1988, partly because of the employer's failure to notify its insurance carrier in a timely manner. For the healing period that began on December 23, 1988, payment was not made until January 6, 1989. Both of these checks were sent by the insurance carrier to the employer, which held the checks for several days before giving them to Meyers. Holiday has not proffered an excuse for these delays. Accordingly, we hold that the issue must be remanded to the commissioner for an assessment of penalties. *Christensen*, 554 N.W.2d at 261.

## III.   *Temporary Partial Disability Benefits for Period of July 12, 1988, to August 5, 1988.*

At the hearing before the commissioner, the parties stipulated that Meyers was in a period of temporary partial disability from

July 12, 1988, to August 5, 1988. They further stipulated that the employer paid him temporary partial disability benefits for that period, but the payments were delayed and the payments due for the period of August 1, 1988, to August 5, 1988, were never paid.

The employer offered no excuse for these delays. We therefore remand this issue to the commissioner to determine the amount of benefits, with penalties to be assessed under section 86.13.

### IV. Healing–Period Benefits for August 25, 1989, to January 9, 1990.

■ Meyers has claimed healing-period benefits for two different periods of time arising out of his December 21, 1988 injury. The first healing period ended on July 25, 1989, when Meyers' doctor released him to return to work with no restrictions except as to loading and unloading and the wearing of a knee brace. This terminated the healing period. See Iowa Code § 85.34(1) (healing benefits terminate when "it is medically indicated that significant improvement from the injury is not anticipated"). This healing period is not at issue now. The "healing period" now at issue is from August 25, 1989, to January 9, 1990. Meyers contends that he should have been awarded penalty benefits for that period of time.

On July 25, 1989, Meyers' doctor released him to work without substantial restrictions. Meyers worked from July 25 to July 29 and then beginning July 31 for fifteen consecutive days. On August 14 Meyers quit. On August 25 Meyers again visited his doctor who then limited Meyers to five days of work per week. It is this limitation imposed on August 25 that Meyers claims began a new healing period. He claims this healing period was not terminated until January 9, 1990, when his doctor stated that he had reached maximum medical improvement.

■ Meyers' argument that the medical report restricting his hours effectively "took him off work" for purposes of re-establishing the healing period is subject to considerable doubt. We believe that his claim for penalty benefits for this period of time was therefore fairly debatable, and we affirm the denial of those benefits.

### V. Underpayment of Benefits for March 15, 1988 Injury.

■ Meyers asks for penalty benefits because his employer, in paying healing-period and temporary partial disability benefits for his March 15 injury, applied an erroneous wage rate. On February 19, 1991, the employer sent a check that purported to resolve the parties' disagreement on this issue and make up the shortage complained of by Meyers. However, according to Meyers, the employer still applied the wrong rate—"only" $240 per week (even though letters in the record suggest that this rate was agreed to by the attorneys).

Meyers argues that payment at the wrong rate subjects the employer to penalties. As an abstract matter, this is true. See Robbennolt, 555 N.W.2d at 237. However, the industrial commissioner did not make specific findings as to the proper rate to be applied, concluding only that the delays were "minimal" and without any finding of an excuse for any late payments.

Because we cannot say in the present state of the record whether the rate applied was correct, we remand to the commissioner for findings on that issue. If it is found that benefits were underpaid, the commissioner should determine whether, on the basis of any agreement between counsel and the other evidence in the record, the delay was excusable. If the delay was not excusable under section 86.13, the commissioner shall determine the amount of penalty to be imposed under Iowa Code section 86.13. See Christensen, 554 N.W.2d at 261. We remand this issue for that purpose.

### VI. Underpayment of Benefits for December 21, 1988 Injury.

The employer paid benefits for Meyers' December 21, 1988 injury, but Meyers again complains that the benefits were based on the wrong wage rate. The commissioner made no findings on that issue but rejected the claim for penalty benefits on the basis that such matters were discretionary with

the commissioner and any delay was "minimal."

For the same reasons expressed in the previous division, we remand this issue for the necessary findings by the commissioner and the determination of penalty benefits, if any, to be applied.

### VII. *The Interest Issues.*

 Meyers makes two arguments concerning interest owed under section 85.30 on the permanent partial disability benefits. He first claims that he is entitled to interest under Iowa Code section 85.30 for any underpayment of benefits. He also claims that, because the payments received were insufficient to cover both principal and interest, they must be first applied to accrued interest and the balance, if any, to principal (the "United States rule"). This left portions of the principal payments unpaid, and therefore, he is entitled to penalty benefits. *See Robbennolt,* 555 N.W.2d at 237; *Christensen,* 554 N.W.2d at 262. We remand to the commissioner to determine in light of *Christensen* and *Robbennolt* what underpayments resulted from the application of the United States rule and for the assessment of interest under Iowa Code section 85.30 and penalties under section 86.13.

### VIII. *Apportionment of Costs.*

The deputy industrial commissioner assessed the costs of the agency proceedings prior to the intra-agency appeal to the employer. Costs of the intra-agency appeal were assessed by the commissioner to Meyers. On judicial review, the district court and the court of appeals taxed one-half of the costs to each party.

 The assessment of costs is discretionary, both in the agency proceedings and on judicial review. Under Iowa Code section 86.40, "[a]ll costs incurred in the hearing before the commissioner shall be taxed in the discretion of the commissioner." Under Iowa Code section 86.32, "[t]he taxation of costs on judicial review shall be in the discretion of the court."

 We remand for the district court and the industrial commissioner to reconsider, in the exercise of their discretion, the question of costs in view of the relative success of the parties on appeal. We tax the costs of this appeal two-thirds to the defendants and one-third to Meyers.

. **DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED IN PART AND REVERSED IN PART; REMANDED WITH INSTRUCTIONS.**